# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROBERT TROTTER JR.,<br><br>**Plaintiff,**<br><br>v.<br><br>JULIAN T. HARRIS, TITUS TRANSPORTATION, LP d/b/a AIR RIDE TRANSPORT, and FAST LANE EXPRESS CARRIER, LLC,<br><br>**Defendants.** | Case No. 16-4005-DDC |

## MEMORANDUM AND ORDER

This matter comes before the court on defendants Julian T. Harris, Titus Transportation, LP, and Fast Lane Express Carrier, LLC's Motion for Summary Judgment (Doc. 40). Plaintiff Robert Trotter Jr. has responded (Doc. 47), and defendants replied (Doc. 49). For reasons explained below, the court denies defendants' Motion.

### I.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute [about] any material fact" exists and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). A disputed "issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And an "issue of fact is 'material'

1

'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To carry this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party meets its initial burden, the non-moving party "'may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992)). To survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id*. (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. To the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

II. **Uncontroverted Facts**

The following facts are uncontroverted or, where controverted, are stated in the light most favorable to plaintiff as the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Plaintiff brings this wrongful death claim under Kan. Stat. Ann. § 60-1901 on behalf of his son, Adrian Trotter. Sometime in the afternoon on November 22, 2013, Adrian and his friend, Joshua Rogers, were at Adrian's mother's home with other family members. Joshua saw Adrian take at least one swig of alcohol at his mother's house before the pair left to pick up Adrian's brother and take Joshua home.

Adrian planned to take westbound Interstate 470, but he mistakenly merged onto southbound Interstate 335 ("I-335") near mile marker 177. Adrian did not take a toll ticket. According to Joshua, Adrian was "agitated" because he missed his turn and was driving "slightly erratic." Doc. 43-1 at 11. Joshua soon became concerned. *Id.* According to Joshua, Adrian was looking for somewhere on the interstate where he could turn around, and he was becoming more and more agitated. *Id.* Joshua testified in his deposition that he felt Adrian's driving was "unsafe" because he was "[s]peeding and weaving in and out of traffic, passing everyone, more or less legally." *Id.*

Adrian eventually found a spot to turn around and entered the toll plaza near I-335 mile marker 147. Adrian spoke with the toll representative via the tollbooth intercom and explained that he mistakenly entered the turnpike and did not have a ticket. Meanwhile, Joshua, fearing for his safety because of Adrian's erratic driving, got out of the car and began pacing. The toll

representative told Adrian to ask Joshua to get back in the car. Joshua did not want to get back into the car because of the way Adrian had been driving, but he obliged. With Joshua back in the car, Adrian began driving north toward Topeka. Joshua testified that he thinks Adrian was driving 90 miles per hour.

Around mile marker 167.5 on northbound I-335, Adrian lost control of the car and, at least twice, struck the concrete barrier dividing the north and south bound lanes. Unable to open the car doors, Adrian and Joshua exited the car through the back driver's side window. Joshua started walking down an embankment on the right hand side of northbound I-335. Joshua eventually laid down in a cornfield and stayed there until the next morning. He does not remember seeing Adrian after they climbed out of the car.

Clinton Hutchins, an engineering technician for the Kansas Department of Transportation ("KDOT") was driving to Lawrence from El Dorado the same evening and witnessed Adrian's crash. He had first noticed Adrian's car behind him in his rearview mirror. Mr. Hutchins was in the right lane, and Adrian passed him in the left lane. He then watched as Adrian's car struck the median barrier twice, sending up a shower of sparks. Mr. Hutchins slowed down, pulled over to the right shoulder of the highway, turned on his hazard lights, and watched as the two men crawled out of the vehicle. Mr. Hutchins watched as Joshua walked down the embankment, and he saw Adrian hop over the barrier and start walking across the southbound lanes of I-335. Mr. Hutchins turned his headlights on to illuminate the crash for oncoming traffic and called 911.

Two other cars collided with Adrian's vehicle. Meanwhile, at 6:35 p.m., Adrian called his sister Ra'Shawn Trotter for help. Ra'Shawn testified that Adrian sounded scared. At this point it was dusk, and Adrian was wearing blue jeans and a black hooded jacket. Ra'Shawn remembers that it was not yet dark when Adrian called, and there was still light on the horizon.

4

Master Trooper James Caldwell was summoned to the accident. Trooper Caldwell began driving southbound on I-335. He drove about a half-mile with his lights and siren on before pulling into a break between the concrete barriers to set up a warning for oncoming drivers. As Trooper Caldwell approached the break, he noticed something moving from west to east across southbound Interstate 335. Trooper Caldwell turned into the break and waited for an oncoming tractor-trailer to pass.

Defendant Julian Harris was driving the tractor trailer, which was leased to Titus Transportation and owned by Fast Lane Express, LLC. The night before, Mr. Harris had driven for approximately 9 1/2 hours, ending at 2:20 a.m. Trooper Caldwell watched as Mr. Harris approached in the left northbound lane on I-335. Mr. Harris saw Trooper Caldwell's flashing lights on the south side of the interstate, and he slowed down preparing to merge back into the right lane. Mr. Harris checked his left mirror and right mirror then turned to look forward. As Mr. Harris passed the break where Trooper Caldwell was waiting, Mr. Harris saw a dark blur come from his left. The dark blur was Adrian. Mr. Harris slammed on his breaks, but not soon enough to avoid a collision. Trooper Caldwell heard a thump, and then discovered Adrian had died.

Critical Highway Accident Response Team ("CHART") Trooper Taylor responded to the scene to investigate Adrian's death. Trooper Taylor determined that the tractor trailer struck Adrian just off the passenger centerline and Adrian had gone under the vehicle. Toxicologist Dr. Christopher Long examined Adrian's body after his death. A toxicological exam of Adrian's liver revealed that, at the time of his death, Adrian's blood alcohol concentration ("BAC") level was .098. The same exam revealed Adrian had metabolized cannabis and diphenhydramine in his body. Dr. Long also determined that Adrian had the equivalent of three beers, 84 nanograms

of 11-Hydroxy-THC, and 600 nanograms of 11-NOR-DELTA-9-THC in his system. Officials also found a substance consistent with marijuana in Adrian's pocket.

**III.     Analysis**

Before addressing defendants' arguments, the court must determine which state's substantive law governs plaintiff's claims. *Rigby v. Clinical Reference Lab., Inc.*, 995 F. Supp. 1217, 1221 (D. Kan. 1998) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Because the parties are citizens of different states and the amount in controversy exceeds $75,000, the court has diversity subject matter jurisdiction in this case. *See* 28 U.S.C. § 1332. Federal courts sitting in diversity apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). For tort claims, Kansas applies the law of the state where the tort occurred. *Brown v. Kleen Kut. Mfg. Co.*, 714 P.2d 942, 944 (Kan. 1986); *see also Atchison Casting Corp. v. Dofasco, Inc.*, 889 F. Supp. 1445, 1456 (D. Kan. 1995). "The 'place of the wrong' is that place where the last event necessary to impose liability took place.'" *Dofasco, Inc.*, 889 F. Supp. at 1456 (quoting *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985)). "Under this rule, the tort is deemed to have occurred where the wrong was felt." *Altrutech, Inc. v. Hooper Holmes, Inc.*, 6 F. Supp. 2d 1269, 1276 (D. Kan. 1998). Because plaintiff brings a wrongful death claim on behalf of Adrian, and Adrian was killed in Kansas, Kansas is the place of the wrong and the court applies Kansas law. The parties do not dispute the choice of law issue, and both parties cite Kansas law in their briefs.

Plaintiff alleges Mr. Harris failed to keep a proper lookout, and that his negligence led to Adrian's death. To succeed on his negligence claim, plaintiff must show: (1) defendants owed a duty to the plaintiff; (2) defendants breached the duty; (3) the breach was the proximate cause of

plaintiff's injury; and (4) plaintiff sustained damages. *Wagoner v. Dollar Gen. Corp.*, 955 F. Supp. 2d 1220, 1224 (D. Kan. 2013).

Defendants move for summary judgment against plaintiff's claims, contending that plaintiff cannot show that Mr. Harris's actions, or inactions, were the proximate cause of Adrian's death. "Proximate cause is defined as that cause which in a natural and continuous sequence, unbroken by an efficient intervening cause, produces an injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act." *Carl v. City of Overland Park, Kan.*, No. 93-2202-JWL, 1994 WL 171736, *5 (D. Kan. Apr. 19, 1994) (quoting *Wilcheck v. Doonan Truck and Equip., Inc.*, 552 P.2d 938, 942 (Kan. 1976)). "Ordinarily, the issue of proximate cause is a question of fact for the jury; however, it becomes a question of law when all the evidence upon which a party relies is susceptible of only one inference." *Id.* (quoting *Union Pac. R.R. Co. v. Gen. Foods Corp.*, 654 F. Supp. 1074, 1078 (D. Kan. 1987)).

Defendants contend that the uncontroverted facts support only one inference: that Adrian's actions, and not Mr. Harris's actions, proximately caused his death. Defendants contend Mr. Harris was driving at the posted speed limit, noticed the disabled vehicle and law enforcement vehicles, slowed his speed, and changed lanes to avoid colliding with the disabled vehicle. According to defendants, the uncontroverted evidence does not reveal any negligence by Mr. Harris. Instead, defendants assert Adrian's death resulted from "the continuous sequence of illegal and negligent acts he [had] committed." Doc. 42 at 4. Defendants apparently refer to Adrian's decision to drive with a high blood-alcohol level and in an agitated state, and his later attempt to cross southbound I-335 at dusk, in dark clothing, on foot.

To support their Motion, defendants rely on the "blinding light rule." Doc. 42 at 9. In Kansas, the blinding light rule is an exception to negligence as a matter of law. Under Kansas law, "when a constant condition exists that knowingly blocks or impairs a driver's vision, the decision to continue driving without exercising reasonable diligence is negligence as a matter of law." *Deal v. Bowman*, 188 P.3d 941, 949 (Kan. 2008). But, when a "driver's vision is *suddenly* blocked by some action beyond his or her control," the driver is not necessarily negligent for something that occurs while the driver is "*temporarily* blinded." *Id.* "In other words, a sudden occurrence may create a factual question regarding the reasonableness of the driver's behavior in reacting to the temporary condition." *Id.* Defendants contend that Adrian running into the highway was analogous to a blinding light that gave Mr. Harris no opportunity to stop his tractor trailer fully or slow down to avoid colliding with Adrian. And, according to defendants, Mr. Harris cannot be liable for a sudden occurrence that was not caused by his own failure and neglect.

But defendants' argument ignores genuine issues of fact that persist, and that the court cannot decide on summary judgment. Indeed, even if the court applied the "blinding light rule" to this case's setting, Kansas law merely establishes that this rule "may create a factual question" about the reasonableness of the driver's behavior. *Bowman*, 188 P.3d at 949. The blinding light rule does not establish as a matter of law that the driver exercised reasonable care. Also, other fact issues preclude summary judgment.

Taking the facts in the light most favorable to plaintiff—as the nonmoving party—plaintiff contends that Mr. Harris did not exercise proper care while driving his tractor trailer and failed to keep a proper lookout. Specifically, plaintiff contends that Mr. Harris was looking forward when he changed lanes, after checking the left and right mirrors. Plaintiff asserts that if

Mr. Harris had kept a proper lookout, he would have seen Adrian waving his arms trying to flag someone down, waited to change lanes, and avoided hitting Adrian. A reasonable jury could infer from this evidence, construing it in the light most favorable to plaintiff, that Mr. Harris was negligent.

While the uncontroverted facts support the inference that Adrian's negligence may have contributed to the events that led to his death, "contributory negligence must be clearly established before that question of fact can properly be withdrawn from the jury." *Conwill v. Fairmount Creamery Co.*, 18 P.2d 193, 193 (Kan. 1933). In other words, "if the question of contributory negligence is one that is reasonably open to debate, one on which reasonable minds might differ, it is a question of fact for the jury." *Deardorf v. Shell Petroleum Co.*, 12 P.2d 1103, 1104 (Kan. 1932). The court thus denies defendants' Motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Summary Judgment (Doc. 40) is denied.

**IT IS SO ORDERED.**

**Dated this 20th day of June, 2017, at Topeka, Kansas.**

                                                  **s/ Daniel D. Crabtree**
                                                  **Daniel D. Crabtree**
                                                  **United States District Judge**