IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ROBERT TROTTER, JR.,**

      **Plaintiff,**

v.                                         Case No. 16-4005-DDC

**JULIAN T. HARRIS, et al.,**

      **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff Robert Trotter, Jr., for himself and all of Adrian Trotter's heirs, files this case against defendants Julian T. Harris, Titus Transportation, LP, and Fast Lane Express Carriers, LLC. Plaintiff asserts one claim against all defendants: wrongful death under the Kansas Wrongful Death Act (Kan. Stat. Ann. §§ 60-1901, *et seq.*). Plaintiff alleges that Mr. Harris wrongfully caused Adrian's death when he negligently drove his semi-truck and hit Adrian on I-335.

The court set this case for trial on January 31, 2018. After conducting a limine conference that morning, the parties informed the court that they had reached a settlement. The parties have asked the court to conduct a settlement apportionment hearing as the Kansas Wrongful Death Act requires. At the hearing, the court orally granted the apportionment the parties proposed. This Memorandum and Order memorializes and explains further the court's findings and rationale.

I.      **Findings of Fact**

At the time of his death, Adrian had two heirs: his mother, Karen Hidalgo, and his father, plaintiff. Adrian never married and he has no children.

Plaintiff retained Pantaleon Florez, Jr. of Pantaleon Florez, Jr. Law Office to represent him in this wrongful death suit. Plaintiff agreed to pay Mr. Florez 40% of any net recovery he realized, after expenses. Ex. 1 at 2. Ms. Hidalgo also has retained Mr. Florez and agreed to pay a similar fee.

As noted above, the parties reached a settlement the morning of the first day of trial. When the parties announced the settlement on January 31, 2018, the parties informed the court that they wished to seal the gross amount of the settlement. At the March 1, 2018 hearing, the court reviewed a copy of the parties' settlement agreement. The court intentionally has omitted reference to the gross settlement amounts in this order because it recognizes the role and value that confidential settlement negotiations can play in the efficient and fair resolution of disputes. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (explaining that while the public has a "general right to inspect and copy public records and documents," the right is not absolute). Here, the court finds that the interest served by preserving the gross amount of the confidential settlement outweighs the public interest in access to that figure. The court briefly explains the basis for this finding in the following paragraphs.

First, neither the public nor members of the media have demonstrated any interest in the proceedings. When the court called the case for trial, only the parties and their counsel appeared. The same was true for the settlement hearing on March 1. And while the public has some level of interest in all proceedings conducted in a forum funded by taxpayers, the *Nixon* standard directs the court to weigh that interest against factors favoring a different outcome. *See id.* at

602 (weighing the public's interest in the Nixon tapes and the public's right to access judicial records against President Nixon's right to privacy and his "property interest in the sound of his own voice").

Here, the public and press have manifested an apathy for the details of this particular case. The court thus evaluates the public's interest in access to the gross amount as slight. This takes the analysis to the second factor: the interests, if any, that favor sealing the settlement's gross value. The parties have explained that confidentiality of this settlement's gross settlement amount played a meaningful role in their negotiations and agreement. The factors favoring mutually agreeable compromise of litigated disputes are well known. *Lowery v. Cty. of Riley*, 738 F. Supp. 2d 1159, 1168 (D. Kan. 2010) ("The law favors agreements to compromise and settle disputes . . . ."). The court will not repeat them here. It suffices to say that a conclusion reached by compromise saves members of the public from having to take time away from work to serve as jurors for trial. It also saves judicial resources. Given these factors and the importance that confidentiality played in this dispute's resolution, the court evaluates this factor as a significant one.

Finally, the court recalls the reason for conducting a settlement hearing in the first place. The Kansas Wrongful Death Act requires such a hearing to ensure that: (a) the amount recovered in such a case is fairly apportioned among the decedent's heirs; and (b) the fee paid to counsel in such cases is a reasonable one. *See Turman v. Ameritruck Refrigerated Transp., Inc.*, 125 F. Supp. 2d 444, 447–455 (D. Kan. 2000) (discussing whether a settlement agreement in a Kansas Wrongful Death Act case fairly apportioned the proceeds to the heirs and whether the fee charged by the lawyers was reasonable). The court can discharge these functions without publishing the settlement's gross amount in its order.

Last, this ruling is a provisional one. By this order, the court has advised members of the public and the media of its reasoning and conclusions. If anyone contends that the court has overlooked important contrary factors or misapplied the *Nixon* analysis, they may file a motion seeking to unseal the gross amount. In sum, the court finds that the *Nixon* factors favoring sealing the settlement's gross amount outweigh those that favor public access to that figure.

Turning to the parties' request, they ask the court to disperse the settlement as follows: (1) $3,072.91 to Mr. Florez for expenses incurred; (2) 40% of the gross settlement amount minus costs to Mr. Florez for his attorney's fee; and (3) the remaining amount split evenly between plaintiff and Ms. Hidalgo—the decedent's only heirs.

## II.    Legal Standard

As a court presiding over a case in federal court on diversity jurisdiction, the court "appl[ies] the substantive law of the forum state, Kansas." *Cohen-Esrey Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1302 (10th Cir. 2011). As explained above, plaintiff brings this action under the Kansas Wrongful Death Act. The Kansas Wrongful Death Act requires the court to apportion the recovery in a Kansas Wrongful Death Act case after conducting a hearing. Kan. Stat. Ann. § 60-1905. The Act provides that the court, first, should allow costs and reasonable attorney's fees for plaintiff's counsel. *Id.* The Act then directs the court to apportion the recovery among the heirs in proportion to the loss sustained by each one. *Id.*; *see also Flowers v. Marshall*, 494 P.2d 1184, 1187 (Kan. 1972) (explaining that the statute "provides for an apportionment among the heirs of any amount recovered to be made by the trial court according to the loss sustained by each").

The Kansas Wrongful Death Act allows for recovery of damages for: (1) mental anguish, suffering, or bereavement; (2) loss of society, companionship, comfort, or protection; (3) loss of

marital care, attention, advice, or counsel; (4) loss of filial care or attention; (5) loss of parental care, training, guidance, or education; and (6) reasonable funeral expenses for the deceased. Kan. Stat. Ann. § 60-1904.  The statute thus allows the court to apportion both pecuniary and non-pecuniary losses.  *Turman*, 125 F. Supp. 2d at 450–55; *see also* Kan. Stat. Ann. § 60-1903 (describing damages the court or jury may award in a wrongful death action).  Pecuniary damages are those that "'can be estimated in and compensated by money.'"  *Turman*, 125 F. Supp. 2d at 453 (quoting *McCart v. Muir*, 641 P.2d 384, 391 (Kan. 1982)).  Pecuniary damages in a wrongful death action are "'equivalent to those pecuniary benefits or compensation that reasonably could have resulted from the continued life of the deceased.'"  *Id.* (quoting *McCart*, 641 P.2d at 391).  In Kansas, pecuniary damages "include the losses of such things as marital or parental care, services, training, advice, and financial support."  *Id.*

Non-pecuniary damages, on the other hand, are generally intangible and may include compensation for "'mental anguish, bereavement, loss of society[,] and loss of companionship.'"  *Id.* at 451 (quoting *McCart*, 641 P.2d at 391).  "The Kansas Supreme Court has recognized that 'while these [intangible damages] are nebulous and impossible to equate satisfactorily with money, they nonetheless are very real and onerous to a bereaved [family member], often far outweighing in severity and permanent effect the pecuniary loss involved.'"  *Id.* (quoting *Corman v. WEG Dial Tel., Inc.*, 402 P.2d 112, 115 (Kan. 1965)).

**III.   Discussion**

The court addresses the distribution of the settlement proceeds in the order that Kan. Stat. Ann. § 60-1905 presents them.

### A. Costs

Kan. Stat. Ann. § 60-1905 allows the court to award counsel the reasonable costs incurred during the litigation. *Newton v. Amhof Trucking, Inc.*, 385 F. Supp. 2d 1103, 1109 (D. Kan. 2004). Here, Mr. Florez represents that his firm expended $3,072.91 in costs. Mr. Florez has submitted an itemized statement of those costs. The court has reviewed the costs and finds that they are reasonable and incurred during litigation of this case. The court thus deducts $3,072.91 from the wrongful death settlement proceeds to compensate plaintiff's counsel for reasonable costs.

### B. Attorney's Fees

Kan. Stat. Ann. § 60-1905 "requires the district court to determine a reasonable fee for the plaintiffs' attorneys in a wrongful death case." *Baugh v. Baugh ex rel. Smith*, 973 P.2d 202, 207 (Kan. Ct. App. 1999). "The general rule is that an attorney is entitled to the reasonable value of services performed for the client." *Id.* When deciding whether a requested fee is reasonable, the court considers the factors set forth in Kansas Rule of Professional Conduct 1.5(a). *Id.* Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

Kan. R. Prof'l Conduct 1.5(a).

Here, plaintiff and Ms. Hidalgo entered into a contingency fee agreement with their attorney, Mr. Florez. The agreement obligated them to pay Mr. Florez a 40% contingency fee.

The court finds that plaintiff's counsel's requested fee representing 40% of the gross settlement proceeds less costs is a reasonable one.  The Rule 1.5(a) factors support the requested award.  First, Mr. Florez obtained a favorable result for plaintiff with the settlement agreement.  Mr. Florez negotiated an agreement that compensates plaintiff and Ms. Hidalgo for the losses that they sustained because of Adrian's death.  Second, the contingency agreement reasonably compensates Mr. Florez for accepting this risky case on a contingency basis.  He accepted the risks and responsibilities that come with such an agreement, and the 40% award reasonably compensates him for doing so.  While the court wouldn't necessarily approve a 40% fee in every case, it's a reasonable fee for this case.  The facts presented a significant challenge for making any recovery at all.  The gross settlement amount is correspondingly modest and will not produce a large or excessive fee.  Third, the award appears reasonable based on Mr. Florez's litigation experience and reputation.  Fourth, the award reasonably compensates Mr. Florez for the work he already has performed.  He took several depositions, responded to defendants' summary judgment motion, and prepared for trial.  Finally, the attorney fee award is reasonable compared to contingency fees charged and awarded in other wrongful death cases.  Indeed, our court has approved attorney's fees of 40% of the gross settlement proceeds as reasonable in other cases apportioning wrongful death proceeds under Kan. Stat. Ann. § 60-1905.  *See Self v. Uhl*, No. 16-cv-4088-DDC-KGS, 2017 WL 2264488, at *3 (D. Kan. May 24, 2017) (awarding a 40% contingency fee in a Kansas Wrongful Death Act case and compiling cases where courts have approved a similar contingency fee for plaintiff's lawyers).

For all these reasons, the court concludes that on the circumstances presented here, the 40% contingency fee award requested by Mr. Florez is reasonable.  The court thus awards 40% of the gross recovery after costs to Mr. Florez as reasonable attorney's fees.

### C. Apportionment of Settlement

Finally, the court considers how to apportion the remaining settlement proceeds. Because Adrian never was married and has no children, his parents—plaintiff and Ms. Hidalgo—are his only heirs. Kan. Stat. Ann. § 59-507. Both testified at the hearing. And they testified that they both believed that the settlement was fair and in their best interests. As his parents, the court finds that plaintiff and Ms. Hidalgo suffered the paramount losses from Adrian's death—both economic and non-economic ones. Because both plaintiff and Ms. Hidalgo suffered significant pecuniary and non-pecuniary losses from Adrian's death, the court divides the remaining settlement proceeds equally.

## IV. Conclusion

As explained above, the court divides the proceeds as follows: (1) $3,072.91 to Mr. Florez for expenses; (2) 40% of the remaining proceeds to Mr. Florez as his attorney's fees; and (3) the remaining settlement amount to plaintiff and Ms. Hidalgo to be divided equally.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the court apportions the settlement proceeds according to and consistent with this Memorandum and Order. Mr. Florez, as plaintiff and Ms. Hidalgo's counsel, is directed to distribute promptly the funds represented by the settlement check.

**IT IS SO ORDERED.**

Dated this 21st day of March, 2018, at Topeka, Kansas.

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**